FILED

2007 Dec-13  PM 04:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| VIRGIL E. COOK, individually and | ] | |
| d/b/a WORM SHACK SPORTING | ] | |
| GOODS, INCORPORATED; and | ] | |
| WORM SHACK SPORTING GOODS, | ] | |
| INCORPORATED, | ] | |
| | ] | |
| Plaintiffs, | ] | |
| | ] | |
| vs. | ] | 7:06-CV-02029-LSC |
| | ] | |
| TRINITY UNIVERSAL INSURANCE | ] | |
| COMPANY OF KANSAS, *et al.*, | ] | |
| | ] | |
| Defendants. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration Defendant's Motion for Summary
Judgment (Doc. 28), filed on June 14, 2007; Plaintiffs' Renewed Motion to
Dismiss or for Judgment as a Matter of Law (Doc. 31), filed on June 15,
2007; Plaintiffs' Motion to Strike Defendant's Evidentiary Submissions in
Support of Summary Judgment (Docs. 34 & 35), filed on July 5, 2007;
Plaintiffs' Motion to Strike Portion of Deponent Joe Bonanno's Errata Sheet

as Supplement to Deposition (Doc. 38), filed on July 17, 2007; and Defendant's Motion to Strike Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 40), filed on July 23, 2007.

Plaintiffs Virgil E. Cook ("Cook"), individually and d/b/a Worm Shack Sporting Goods, Incorporated, and Worm Shack Sporting Goods, Incorporated ("the Worm Shack") originally filed suit in the Circuit Court of Tuscaloosa County, Alabama, on September 12, 2006.  In their complaint, the plaintiffs alleged that Trinity Universal Insurance Company of Kansas ("Trinity") was liable for breach of the insurance contract and bad faith refusal to pay the claim under the policy.   (Doc. 1.)   Trinity answered and asserted counterclaims of fraud, misrepresentation, suppression, breach of contract, and bad faith.  (Doc. 3.)  The action was removed to this Court on October 10, 2006.  (Doc. 1, CV-06-2029-W.)

Trinity has moved for summary judgment on all of Plaintiffs' claims. Plaintiffs have moved to dismiss Trinity's counterclaims of bad faith, fraud, misrepresentation, and suppression.  The issues raised in Trinity's motion for summary judgment and Plaintiffs' renewed motion to dismiss or for judgment as a matter of law have been briefed by both parties and are now

ripe for consideration.[1]  Upon full consideration of the legal arguments and evidence presented, Trinity's motion for summary judgment and Plaintiffs' motion to dismiss or for judgment as a matter of law will be granted.

II.    Facts.[2]

In June of 2005, Trinity issued a renewal of a Businessowners insurance policy to the Worm Shack, the only named insured on the policy, which was effective from June 30, 2005, until June 30, 2006.  (Trinity BusinessOwners Policy.)  The policy provided coverage for both the building and personal property of the business.  *Id.*  Along with the policy provisions regarding coverage, the policy also contained provisions which voided coverage if the insured intentionally concealed or misrepresented a material fact, or committed fraud in connection with the policy.  *Id.*  Also, the policy

---

[1]Defendant Trinity has filed a Motion to Strike Plaintiffs' reply to the Motion for Summary Judgment.  (Doc. 40.)  Since the motion for summary judgment should be granted, Trinity's motion to strike will be denied.

[2]The facts set out in this opinion are taken from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the non-moving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

excludes coverage for losses if arson, or any other dishonest or criminal acts committed by the insured, is the basis for the loss. *Id.*

On January 4, 2006, while the insurance policy was still in full force and effect, the building where the Worm Shack was located caught fire. (Doc. 26.)  As a result of the fire, the building, certain fixtures in the building, and some of the store's inventory were damaged. *Id.*  Along with the damaged property, Cook also asserted that approximately $1,200 and five (5) guns were stolen from the building around the time of the fire. *Id.*

On the night of the fire, Cook was the last person to leave the building, and had no alibi as to his whereabouts at the time of the fire. *Id.* The firemen, who responded to the scene, reported no evidence of forced entry into the building.  Investigators also found that the telephone lines to the building had been cut. *Id.*

Cook, as the owner and President of the Worm Shack, filed a Proof of Loss with Trinity on February 28, 2006, making a claim under the insurance policy for an estimated $859,000 in damages as a result of the fire. *Id.* Subsequently, Trinity performed an investigation of the claim due to the

suspicious nature of the fire.  *Id.*

As a result of the findings of the investigation, Trinity denied Worm Shack's claim on April 24, 2006.  *Id.*  In the denial of the claim, Trinity informed Cook that the investigation revealed that the cause of the fire was not accidental, but rather that it was intentionally set.  In its investigation, Trinity also determined that the Worm Shack was not financially stable.  It was overdrawn in its checking account, was past due on numerous accounts, and had reported a loss in terms of net income since 2000.  *Id.*  At the time of the fire, Cook, along with the Worm Shack, was indebted to The Bank of Tuscaloosa for $231,605.57 for a mortgage on the Worm Shack building; $464,488.93 for a second loan that was secured by Worm Shack inventory, fixtures, the Dairy Queen building owned by Cook, and Cook's personal residence; and $58,745.53 for a third loan secured by a CD owned by Cook and his wife.  *Id.*  Since the Worm Shack was not financially solvent, Cook had been paying the bills for the Worm Shack with both business and personal credit cards.  *Id.*

Therefore, Trinity denied the claim based on arson.  *Id.*  Trinity also

advised Cook that the denial of the claim was based on Cook's material misrepresentations regarding the claim, and because various provisions of the insurance policy including the provisions with respect to concealment, misrepresentation, or fraud had been violated. *Id.* Even though Trinity denied Worm Shack's claim, Trinity nonetheless, in accordance with applicable policy provisions and Alabama law, made payment of $243,468.56 to The Bank of Tuscaloosa, Worm Shack's mortgagee, in exchange for all rights in the mortgage. *Id.*

Following Trinity's denial of the claim, Cook and the Worm Shack filed this action alleging that Trinity failed to investigate the incident and therefore made a bad faith denial of Plaintiff's claim, and that Trinity breached the insurance contract by refusing to cover the losses under the terms of the policy. *Id.* In response, Trinity asserted counterclaims of bad faith, breach of contract, fraud, and material misrepresentation or concealment.

III.    Evidentiary Motions.

As a preliminary matter, the Court will address the evidentiary motions

filed by both parties in this action.

    A.    Plaintiffs' Motion to Strike Defendant's Evidentiary Submissions in Support of Summary Judgment.

Plaintiffs seek to strike portions of Defendant Trinity's evidentiary submissions in support of summary judgment.  (Docs. 34 & 35.)  The issue of admissibility of such submissions is an evidentiary question, procedural by nature, that is governed by federal rather than state law.  *Erie Railroad Co. v. Thompkins*, 304 U.S. 64 (1938).

    1.    Affidavit of John M. Brook (Exh. I).

Plaintiffs contend that the Affidavit of John M. Brook ("Brook") (Brook Aff.), expressing his opinion regarding the nature, origin, and cause of the fire, should be stricken because Brook was not listed as an expert witness and has not been qualified as an expert.  (Doc. 34 at ¶ 1.)

Federal Rule of Civil Procedure 56(e) permits supporting and opposing affidavits regarding a motion for summary judgment; however, the rule requires the affidavits to "be made on personal knowledge, . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively

that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e)(2007). The affidavit in question clearly indicates that it was based on personal knowledge of the affiant and that he is competent to testify; therefore, the only issue is whether the evidence contained in the affidavit is admissible at trial.[3]

Rule 56(e)'s "directive with respect to admissibility of an affidavit's contents on summary judgment has been liberally construed." *Londrigan v. Fed. Bureau of Investigation,* 670 F.2d 1164, 1174 (9th Cir. 1981). *See also* 10B WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2738 (3d ed. 1998). Rule 56(e) has been said to be "an enlarging provision as to what may be considered, not a restriction." *Reed v. Ford Motor Co.,* 679 F. Supp. 873, 874 (S.D. Ind. 1988)(quoting *Young Hong Keung v. Dulles*, 127 F. Supp. 252 (D. Mass. 1954)); *see also Wright v. Wyandotte County Sheriff's Dep't*, 963 F. Supp. 1029, 1035 (D. Kan. 1997); 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2721 (3d ed. 1998)(stating that Rule 56(e) is viewed

---

[3]John M. Brook stated in his affidavit that he has "personal knowledge of the facts stated in this Affidavit." (Brook Aff.) Neither party disputes that Brook is competent to testify and that his affidavit is based on personal knowledge of the fire.

as an enlarging provision).

Brook, a Captain and Fire Investigator for the Tuscaloosa Fire and Rescue Service, states in his affidavit the findings of his investigation into the Worm Shack fire. (Brook Aff.)  Since this case is based on Defendant's denial of Plaintiffs' insurance claim due to the alleged arson committed by Plaintiffs, the facts and testimony concerning the cause of the fire contained in the affidavit are relevant to the issues presented in this case.

While Plaintiffs contend that Brook's affidavit is not admissible since he was not listed as an expert on Trinity's initial disclosures, Brook was identified as "a witness having discoverable information."  (Doc. 36.)  In addition, Brook was dispatched by the Tuscaloosa Fire and Rescue Service on the night of the fire to investigate the cause of the fire inside the Worm Shack, and was not retained or specially employed by Trinity. (Tuscaloosa Fire & Rescue Report; *see also* Brook Aff.)

Finally, this Court need not address Plaintiffs' objection to Brook's testimony that the fire was the result of arson because Plaintiffs do not

dispute this fact.[4]   Plaintiffs agree that the fire was caused by arson and therefore their complaint concerning Brook's testimony to that effect is pointless.   The Court will deny Plaintiff's motion to strike the affidavit of Brook's in its entirety.

2.   Records of Cooks' Personal Finances (Exh. U & V) and Finances of Dairy Queen (Exh. T).

Plaintiffs also seek to strike the financial records of Cook as well as those of another business, the Dairy Queen.  (Doc. 34.)  Plaintiffs argue that such records are irrelevant and therefore inadmissible.

Courts have given the rule relating to admissibility of evidence a liberal interpretation.  *See Young v. U.S.*, 327 F.2d 933 (5th Cir. 1964).  To be admissible, the evidence submitted must be relevant.  *See Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1524 (11th Cir. 1985); Fed. R. Evid. 402.  The determination of whether evidence is relevant is within the sound discretion of the district court.  *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1524 (11th Cir. 1985).

---

[4]Plaintiffs do not allege that the fire was not a result of arson but only that the Plaintiffs did not cause the arson.

It is clear that the financial records of Cook, as well as the Dairy Queen,  were considered in determining if there was a financial motive to cause the fire.  (Bonanno Dep.)   In addition, as the adjustor for Trinity stated, the records of the Dairy Queen were taken into account to see if any funds were transferred from the Dairy Queen to the Worm Shack.  *Id.* at 85.

In reviewing this evidence, it is apparent that these records demonstrate that Cook had pledged personal assets and taken out loans for the Worm Shack in an effort to keep it operating.  (Doc. 36.)  Clearly, they are relevant and material to the investigation of the Worm Shack's financial condition at the time of the fire.  Therefore, Plaintiffs' motion to strike these records will be denied.

### 3. Plaintiffs' Motion to Strike Portion of Joe Bonanno's Deposition.

Plaintiffs have filed a motion to strike a portion of the declarations of Joe Bonanno ("Bonanno").  (Doc. 35.)  In their motion to strike, Plaintiffs identify the specific statement they want stricken and argue that the testimony is inadmissible because Bonanno was neither listed as an expert

nor does he qualify as an expert. *Id*.   The Court finds that the testimony is admissible.

In this case, Bonanno, an executive general adjustor in the field of large and complicated property losses, offered testimony regarding the physical evidence of the safe.[5]  (Bonanno Dep.)  As to the testimony that Bonanno offered, it seems apparent that the statements are admissible because the statements arise from common knowledge.

To begin, Bonanno's findings regarding the pry marks on the safe result from knowledge that a lay person would possess.  In stating his opinion, Bonanno relied on observations and photographs of the safe which showed that the pry marks were not necessary to open the safe, since the safe appeared to be already open or unlocked when the pry marks were made. (Bonanno Dep. at 72.)  The photographs show that the lock bolt is not bent

_____

[5]The specific statement that Plaintiffs argue should be stricken states:

> The physical evidence demonstrates that the pry marks on the "safe" were not used to break into the safe as the dead bolt was not bent or distorted. Had the "safe" truly been broken into, the dead bolt would have to have been bent or broken.

Doc. 32 (citing Bonanno Dep. at 69-72).

nor is the area around it damaged, indicating that the "safe" was not pried open, but rather that the safe had to have been open when the pry marks were made on the safe as to create the appearance of forcing the safe open. *Id.* at 71 & 37.   In viewing the condition of the lock bolt, a lay person would come to the same or similar conclusion in looking at the lack of dents and damage.   Under Federal Rule of Evidence 701, a witness may give opinions if they "are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."   Fed. R. Evid. 701. Since this observation regarding the lock bolt does not require any scientific, technical, nor specialized knowledge, an expert opinion is not necessary nor permitted.   *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 565 (11th Cir. 1998)(holding that if a trier of fact could come to a similar conclusion without technical assistance, an expert opinion is not permitted). Thus, Bonanno's opinion, based on his perception of the safe, is admissible to give a clear understanding of his testimony and to aid in the

determination of whether there was a robbery.  The motion to strike a portion of Bonanno's deposition is denied.

B.   Plaintiffs' Motion to Strike Portion of Deponent Joe Bonanno's Errata Sheet as Supplement to Deposition.

Plaintiffs seek to strike a portion of Deponent Joe Bonanno's  errata sheet, which makes corrections to his deposition.  (Doc. 38.)  In their motion to strike a portion of Bonanno's errata sheet, Plaintiffs claim that the change to his original deposition is not allowed under the Federal Rules of Civil Procedure, and that Defendant failed to meet the requirements of Federal Rule of Civil Procedure Rule 30(e) ("Rule 30(e)") to make such a change.  *Id.*

Defendant acknowledges that Deponent Bonanno made changes of form or substance to his deposition.  (Doc. 44.)  However, Defendant argues that Rule 30(e) allows such changes, especially in cases where the deponent corrected his answers "due to confusion and misunderstanding" and where "the changes were made before the plaintiffs filed any dispositive motion." *Id.* at ¶ 5.

Federal Rule of Civil Procedure Rule 30(e) states:

> If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them.   The officer shall indicate in the certificate prescribed by subdivision (f)(1) whether any review requested and, if so, shall append any changes made by the deponent during the period allowed.

Fed. R. Civ. P. 30(e)(2007).  According to the language of the Rule, there are two restrictions on corrections or changes to a deposition: (1) the changes must be made within 30 days after notification of the availability of the transcript, and (2) the deponent must give reasons for "changes in form or substance."  *See* Fed. R. Civ. P. 30(e); *see also Reilly v. TXU Corp.*, 230 F.R.D. 486, 490 (N.D. Tex. 2005).  Plaintiffs contend that Bonanno failed to give reasons for his changes,[6] and that courts have interpreted Rule 30(e) as setting limits on the scope of corrections authorized under the rule. (Doc. 38.)

---

[6]While Plaintiff alleges that Bonanno did not state reasons for his changes to the deposition, Bonanno filed an affidavit with this Court stating that he misinterpreted the question when originally asked and therefore changed his answer to reflect his true answer.  (Doc. 44.)

While early cases gave the impression that "Rule 30(e) 'in no way limits the types and number of changes' that an errata sheet is permitted to make to a prior deposition,"[7] the rule followed by the Eleventh Circuit is "to the contrary."   *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230,1269 (11th Cir. 2007).  In determining the scope of changes permitted by Rule 30(e), the Eleventh Circuit relied on the holding of *Greenway v. Int'l Paper Co.*,  where the court stated that:

> The purpose of Rule 30(e) is obvious.  Should the reporter make a substantive error, i.e., he reported "yes" but I said "no," or a formal error, i.e., he reported the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent would be in order. The Rule cannot be interpreted to allow one to alter what was said under oath.  If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses.

*Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992).  While the errata sheet may be used to correct errors or clarify an answer, it may not be used to permit a person to alter what was said under oath.  *See id*. (stating that "[a] deposition is not a take home examination"); *see also Rios*

---

[7]*See Sec. & Exch. Comm'n v. Parkersburg Wireless L.L.C.*, 156 F.R.D. 529, 535 (D.D.C. 1994)(where the court stated that older cases appear to support the position that a party can make any substantive changes as desired, "later cases have often limited this blank check; perhaps because of the potential for abuse").

*v. Bigler*, 847 F. Supp. 1538, 1546-47 (D. Kan. 1994).   In addition, the language of Rule 30(e) does not permit "changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment." *Hembleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005).   Therefore, courts will only consider corrections, changes, or alterations to a deposition by an errata sheet that clarify the deposition, and not those changes that materially alter the deposition.   *See Amlong & Amlong, P.A.*, 500 F.3d at 1269 (citing *Rios v. Bigler*, 847 F. Supp. 1538, 1546-47 (D. Kan. 1994)); *see also McCarver v. PPG Industries, Inc.*, 2007  WL 2317792, at *1-2 (N.D. Ala. Aug. 14, 2007)(finding that "the changes Plaintiff proposes in his 'Transcript Errata Sheet' are substantive in nature and, therefore, impermissible under Rule 30(e)").

Here, Bonanno's initial sworn answer of "no" does not reflect any confusion that should have been "clarified" by the substitution of the exact opposite answer.  Defendant contends that the changes made by Bonanno's errata sheet were "due to confusion and misunderstanding on his part," and that the change was not intended "to create any issue in the case with respect to either the plaintiffs' claims or Trinity's defenses."  (Doc. 44.)

However, rather than simply correcting inaccuracies of transcription or mistakes of translation, the errata sheet changes bolster Trinity's case by supplying support for Trinity's claim that it did in fact reinvestigate the claim after learning of new evidence. Thus, the changes made by Bonanno's errata sheet materially alters the substance of his answers, because it changes the answer regarding whether any further investigation was performed after new information was presented to Trinity  from "no" to "yes."[8]  Bonanno's change to his deposition made by the errata sheet will be disregarded.

For the reasons stated above, Plaintiffs' motion to strike a portion of Deponent Joe Bonanno's Errata Sheet will be granted.

---

[8]The change Bonanno made to the transcript involves a series of questions asked by Plaintiffs' counsel regarding whether further actions were taken by the insurance company, Trinity, once information was presented that one of the alleged stolen guns was found in the hands of an alleged drug dealer.  The deponent originally answered "no" when asked whether this new information warranted the case being reopened or revisited; however, he changed his answer to "yes" on the errata sheet.  (Doc. 44, Ex. C.)

IV.   Standard of Review.[9]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and

---

[9]Plaintiffs' motion is presented as a renewed motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or motion for judgment as a matter of law under Rule 56.  In reviewing Plaintiffs' motion as one for judgment as a matter of law, this Court will utilize the standard set out in Part IV.  However, to the extent that the motion should be construed as a motion to dismiss, the following standard will be applied:

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted.  "The standard of review for a motion to dismiss is the same for the appellate court as it [is] for the trial court." *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).  "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (*quoting GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  All "reasonable inferences" are drawn in favor on the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).  Ordinarily, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d

1428, 1437 (11th Cir. 1991)).

"[A]t the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986).  However, judges are not "required to submit a question to a jury merely because some evidence has been introduced by a party having the burden of proof, unless the evidence be of such character that it would warrant the jury finding a verdict in favor of that party.  *Id.* at 251 (*quoting Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1872)).  "This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250.

V.     Analysis.

        A.     Defendant's Motion for Summary Judgment.

The complaint alleges breach of contract and bad faith under Alabama law.  Trinity contends that it is entitled to summary judgment on both claims.  The Court addresses each claim below.

       1.    Breach of Contract.

Trinity argues that summary judgment is due to be granted because no breach of contract occurred.[10]   Trinity contends that, based on arson, exclusions contained in the insurance policy, and Alabama Code § 27-14-28, Plaintiffs were not entitled to recover benefits under the policy.  (Doc. 30.)

       a.    The Arson Defense.

An absolute defense to an action arising from the alleged breach of the insurance policy is "[a]rson by an insured," even if the language of the policy does not provide such a defense. *Mueller v. Hartford Ins. Co. of Ala.*, 475 So. 2d 554, 557 (Ala. 1985).  In order to establish a prima facie case of arson, the insurer must present evidence of: (1) "arson by someone," (2) "motive by the plaintiff," and (3) "unexplained surrounding circumstantial evidence implicating the plaintiff." *Mueller*, 475 So. 2d at 557; *see also S & W Properties, Inc. v. Am. Motorists Ins. Co.*, 668 So. 2d 529, 532 (Ala. 1995).

---

[10]In order to establish a breach of contract claim, a plaintiff must show "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999).

In establishing arson, the "insurer's burden of proof is not particularly heavy." *Fondren v. Allstate Ins. Co.,* 790 F.2d 1533, 1535 (11th Cir. 1986)(citing *Mueller*, 745 So. 2d at 557; *Great Southwest Fire Ins. Co. v. Stone*, 402 So. 2d 899, 900 (Ala. 1981)).   Arson may be proven by direct evidence or even by circumstantial evidence, particularly since circumstantial evidence is often the only clue as to the identity of the arsonist. *Bush v. Ala. Farm Bureau Mut. Cas. Ins., Inc.*, 576 So. 2d 175, 179 (Ala. 1991); *see also Mueller*, 475 So. 2d at 557; *Great Southwest Fire Ins. Co.*, 402 So. 2d at 899.  When relying on circumstantial evidence,[11] the evidence need only be "of sufficient force to bring minds of ordinary intelligence to a persuasion of incendiarism by a fair preponderance of the evidence." *Fondren*, 790 F.2d at 1535 (citing *Mueller*, 475 So. 2d at 557); *see also Dempsey v. Auto Owners Ins. Co.*, 717 F.2d 556, 559 (11th Cir. 1983)(stating that Alabama law does not require proof of arson beyond a reasonable doubt).

In regard to proof of arson, in cases "where sufficient motive and

---

[11]Proof of arson may be made by circumstantial evidence "if the inferences are not too remote and all circumstances, including the inferences, are of sufficient force" to persuade ordinary minds of the arson. *Mueller*, 475 So. 2d at 557.

opportunity of the insured to commit arson were combined with proof of an incendiary cause of fire, [courts] have considered the arson defense to be supportable by inference." *Cora Pub, Inc. v. Cont'l Cas. Co.,* 619 F.2d 482, 485 (11th Cir. 1980)(where the court stated that joining the fact of the company's motive with the opportunity to reach the conclusion that the company intentionally set the fire was sufficient); *see also Sullivan v. Am. Motorist Ins. Co.*, 605 F.2d 169 (5th Cir. 1979); *Crown Colony Distribs., Inc. v. U.S. Fire Ins. Co.*, 510 F.2d 544 (5th Cir. 1975); *Hanover Fire Ins. Co. of N.Y. v. Argo*, 251 F.2d 80 (5th Cir. 1958); *Don Burton, Inc. v. Aetna Life & Cas. Co.*, 575 F.2d 702 (9th Cir. 1978); *Elgi Holding Inc. v. Insurance Co. of N. Am.*, 511 F.2d 957 (2d Cir. 1975); *Stein v. Girard Ins. of Philadelphia*, 259 F.2d 764 (7th Cir. 1958).

i.    Arson by Someone.

In order to establish the element of arson by someone, the insurer can present either direct evidence of arson or provide circumstantial evidence which leads to the inference that the fire was a result of arson.  If it is undisputed that arson was the cause of the fire, the first element of an insurer's arson case is met.  *See Day v. Alfa Mut. Ins. Co.*, 659 So. 2d 32, 34

(Ala. 1995); *see also Shadwrick v. State Farm Fire & Cas. Co.*, 578 So. 2d 1075, 1078 (Ala. 1991)(where plaintiff stated that the evidence established arson, the first element was met).  In addition, in cases where a cause and origin investigator testifies that the fire was not of accidental causes, evidence exists as to establish "arson by someone." *See Williams v. Allstate Ins. Co.*, 591 So. 2d 38, 41 (Ala. 1991); *see also Fondren*, 790 F.2d at 1535 (where the fire investigators were able to rule out all possible causes of the fire other than arson, the evidence proved arson).

In this case, a fire occurred at the Worm Shack on January 4, 2006, at approximately 11:45 p.m.  The fire damaged the building, inventory, and fixtures located in the building.  Robert Klitsch, an origin and cause expert, and John M. Brook, a fire investigator, investigated the fire and determined that the fire  originated near the southeast door in the storage area of the building.  (Doc. 26.)

The fire investigation ruled out any accidental cause for the fire. *Id*. Robert Klitsch, an expert in the area of origin and cause of fire investigations, testified that "the only thing [he] c[ould] not rule out" was that the fire was an intentional, man-made fire.  (Klitsch Dep. at 30.)  He

determined that the fire was set by someone igniting combustible material. *Id*. In addition, Perry Hopkins, an electrical engineer, performed an electrical scene examination and concluded that the fire was not electrical in nature. (Hopkins Report.)   Further, John M. Brook, a captain with Tuscaloosa Fire and Rescue, investigated the fire and eliminated all accidental causes of the fire. (Brook Aff.) Since the fire investigators were able to rule out all possible causes of the fire except arson, Trinity presented sufficient evidence to establish arson by someone. *See Williams*, 591 So. 2d at 41; *Fondren*, 790 F.2d at1535. Moreover, the Plaintiffs admit that the fire was a result of arson. (Doc. 39.)

ii.    Motive.

In addition to establishing arson by someone, an insurer must also present evidence of motive by the insured. Evidence of financial instability of the insured may point to a motive for arson. *See Day*, 659 So. 2d at 34 (where the insureds' checking account was overdrawn, their savings was diminishing, and their property had decreased in value, the court found that the insureds had a motive for arson); *see also Bush*, 576 So. 2d 175 (at the time of the fire, the Bushes were having financial trouble; therefore, the

court felt that sufficient evidence existed to support a motive); *Williams,* 591 So. 2d at 41 (where insurer presented evidence that the insured was in bankruptcy, the insurer was found to have met its burden of motive); *Fondren,* 790 F.2d at 1535 (to establish motive, the court felt that the extremely poor financial condition of the plaintiffs sufficed to prove motive).  Also, in a situation where the proceeds from the insurance policy may allow an insured to pay off various debts, the plaintiff's financial difficulties may provide sufficient evidence of motive.  *See Shadwrick,* 578 So. 2d at 1078 (stating that even though plaintiff claimed to have lost irreplaceable items of sentimental value in the fire, the financial difficulties were still sufficient evidence to allow a determination of motive to commit arson).

Here, Trinity presented evidence that the Worm Shack was experiencing financial difficulty at the time the fire occurred and likely would not be able to financially recover.  For example, the Worm Shack business operated at a loss for the years 2000, 2001, 2002, and 2004, with only a $3,728 profit for the year 2003.  (Doc. 26.)  Also, in 2005, the checking account was overdrawn for the majority of June, and for all of July

and August, until loan proceeds were deposited in the account.    *Id.*
However, even with the loan proceeds, the account was overdrawn again
within a month.   *Id.* In addition, the Worm Shack was past due on numerous
accounts, which were owed to its suppliers.[12]  (Doc. 26.)  The Worm Shack
owed approximately $34,000 on credit cards, which the business had used
to make payments to suppliers and to purchase inventory, at the time of the
fire.   *Id.*

Further, at the time of the fire, Cook was indebted to The Bank of
Tuscaloosa in the amount of $231,605.57, which was secured by the Worm
Shack building; $464,488.93, which was secured by the Worm Shack
inventory, trade fixtures, equipment, receivables, the Dairy Queen building,
and Cook's personal residence; and $58,745.53, which was secured by a
certificate of deposit owned by Cook.    *Id.* This evidence of the Worm
Shack's financial difficulty is sufficient to show a motive for arson by
Plaintiffs.  *See Day*, 659 So. 2d at 34; *see also Bush*, 576 So. 2d 175;

---

[12]The Worm Shack was past due on accounts owed to suppliers including: $18,570.57 to
Hoyt; $550 to Clear Channel; $1,764.52 to Field Logic; $2,504.35 to Frogg Toggs;
$2,899.63 to Kinsey's Archery; $2,774.09 to Pape's, Inc.; $1,438.98 to Shimano; $720.36
to Southern Lure; $1,050 to WNPT-FM; $346.90 to Wiley; and $102,957.88 to Farris
Brothers.  (Doc. 26.)

*Williams*, 591 So. 2d at 41; *Fondren*, 790 F.2d at 1535.

### iii.   Evidence Implicating Plaintiff.

Finally, the insurer must show that there was "unexplained surrounding circumstantial evidence implicating the insured." *Mueller*, 475 So. 2d at 557.  In regard to opportunity, "[t]he last person to leave the building before a fire creates a circumstance which courts have deemed important to arson cases." *Great Southwest Fire Ins. Co.*, 402 So. 2d at 900 (where Stone and his girlfriend were the last people to leave the club and locked the doors before leaving, the court held that the evidence connecting Stone with the arson could be inferred from the circumstances); *see also Bush*, 576 So. 2d 175 (where the Bushes were the last persons to leave the house, the court held that sufficient evidence existed as to opportunity); *Crown Colony Distribs., Inc.*, 510 F.2d 544; *Lawson v. State Farm Fire & Cas. Ins. Co.*, 548 P.2d 318 (Colo. App. 1978).  In addition, courts have "taken notice of the existence and whereabouts of keys where the access to a premises has been limited." *Great Southwest Fire Ins. Co.*, 402 So. 2d at 901 (citations omitted)(where the court stated that the fact that  Stone and his girlfriend were the only people with keys to the club was

of importance in determining opportunity to commit the arson).

Here, Plaintiffs allege that Trinity made no showing of this element, asserting that Trinity ignored the fact that no criminal proceedings had been brought against Cook and that the firemen possibly could have mistaken a stuck door for a locked door.   However, Trinity only needs to show *unexplained* surrounding circumstantial evidence implicating Plaintiffs. Cook was the last person to leave the Worm Shack building prior to the occurrence of the fire, securing the building and the alarm when he left. (Doc. 26.)  Since the last person to leave the building before a fire creates a circumstance important to arson, this evidence when combined with the evidence of a lack of forced entry establishes an unexplained circumstance tending to implicate Cook.  *See Great Southwest Fire Ins. Co.*, 402 So. 2d at 900.  On the night of the fire, someone apparently used a key to gain entry into the building. (Doc. 26 at ¶ 8.)  Cook and a few of his employees had a full set of keys to the building.  (Cook Examination under Oath at 133-37.) However, Cook testified that he did not suspect any of his employees who had keys and that he wouldn't have given them keys if he believed any of them to be dishonest.  In addition, Cook has "no confirmed alibi for the time

of the fire." (Doc. 26 at ¶ 17.)  Cook left his house between 10:00 p.m. and 10:30 p.m., was not seen again until he arrived at the scene of the fire, and has admitted that there is no way to confirm his location at the time of the fire.  Based on Cook's lack of alibi for the time of the fire, the opportunity to commit arson can be inferred from the circumstance.  The evidence connecting Cook with the arson and from which opportunity to commit the arson could be inferred was extensive, particularly since the evidence established that Cook had access to the building, did not have an alibi, and there was no evidence of forcible entry.

Thus, the evidence of a sufficient financial motive and the unexplained circumstances evidencing Cook's opportunity to commit arson, combined with the undisputed fact that the fire was a result of arson, supports Trinity's arson defense.  *See Cora Pub, Inc.,* 619 F.2d at 485; *see also Sullivan*, 605 F.2d 169; *Crown Colony Distribs., Inc.*, 510 F.2d 544; *Hanover Fire Ins. Co. of N.Y.*, 251 F.2d 80.

<div style="margin-left:3em">

b.    Exclusions Contained in the Insurance Policy and Alabama Code § 27-14-28 as a Defense.

</div>

Trinity also contends that there was not a breach of contract since it

rightfully denied the claim under exclusions contained in the policy and Alabama Code § 27-14-28. (Doc. 30.)  Trinity relies on two provisions of the Businessowners Insurance Policy to support its contention that Plaintiffs were not entitled to recover under the policy.   The Businessowners Insurance Policy contains specific language which excludes coverage for any insured, such as the Plaintiff, who intentionally conceals or misrepresents information.  This provision of the Businessowners Policy provides:

> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time.  It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>     1.  this policy;
>     2.  the covered property;
>     3.  your interest in the covered property; or
>     4.  a claim under this policy.

Businessowners Common Policy Conditions, Part C.  (Trinity Businessowners Policy at 42-43.)  In addition, the policy contains a provision that excludes coverage for dishonest or criminal acts, such as arson, of the insured.  *Id.* at 10 & 12.

By its express terms, the policy becomes void if any insured "intentionally conceal[s] or misrepresent[s] a material fact concerning . . .

a claim under this policy." (Trinity Businessowners Policy.) It is well settled in Alabama that "misrepresentation of a material fact by an insured constitutes an absolute defense to an insured's claim for breach of contract." *State Farm Fire & Cas. Co. v. Balmer*, 672 F. Supp. 1395, 1399 (M.D. Ala. 1987); *see also Payne v. Nationwide Mut. Ins. Co.*, 456 So. 2d 34, 36 (Ala. 1984)(stating that the defense of misrepresentation has been recognized in Alabama).   To preclude recovery because of fraud or misrepresentations in the proof of loss, "the statement must relate to matter which is material." *Hartford Fire Ins. Co. v. Clark*, 61 So. 2d 19, 27 (Ala. 1952).

In addition, proof of loss misrepresentations are specifically referred to in Alabama Code § 27-14-28 (1975).  This Code section provides:

> No misrepresentation in any proof of loss under any insurance policy shall defeat or void the policy unless such misrepresentation is made with actual intent to deceive as to a matter material to the insured's rights under the policy.

ALA. CODE § 27-14-28 (1975).  Statutory provisions regarding insurance are to be read into all insurance contracts subject to Alabama law; therefore, § 27-14-28 must be read into the insurance policy.  *See Ex parte State Farm Fire*

& *Cas. Co.*, 523 So. 2d 119, 120 (Ala. 1988).

In this case, Cook submitted a claim for approximately $859,000 in damages under the insurance policy as a result of the fire.  (Doc. 26.)  In signing the Proof of Loss, Cook declared that the loss resulting from the fire "did not originate by any act . . . on the part of [the] insured or this affiant."  (Doc. 1 at 14.)  However, in light of the evidence which establishes the defense of arson, it is apparent that Cook intentionally misrepresented the claim under the policy with the intent to obtain payment from Trinity.  In addition, Cook made misrepresentations to Trinity during the investigation regarding issues such as the status of the alarm system and the status of the doors.  Cook informed the fire officials that the audible alarm was out of service and had been for months; however, it was determined only to have been disconnected internally just prior to the fire as the alarm was in service up until at least Christmas of 2005.  (Bonanno Dep. at 60-65; Longeway Dep. at 27-28.)  Also, Cook represented that a back storage door was left unlocked; however, Cook admitted that he did not exit through this door after his employees locked up the store.   (Cook Examination under Oath at 335.)   These misrepresentations made by Cook

may be imputed to the insured, the Worm Shack.[13]   *See In re Matter of World Hospitality Ltd.*, 983 F.2d 650, 652 (5th Cir. 1993)(stating that "[w]hen one person owns a controlling interest in the corporation and dominates the corporation's actions, his acts are the corporation's acts[;][a]llowing the corporation to recover for the owner's fraudulent or dishonest conduct would essentially allow the corporation to recover for its own fraudulent or dishonest acts"); *McKee v. Great American Ins. Co.*, 316 F.2d 473 (5th Cir. 1963);  *Bird v. Centennial Ins. Co.*, 11 F.3d 228 (1st Cir. 1993).  Since the cause of the fire is a matter which is material to the claim, these misrepresentations in the proof of loss will void the policy.  Due to the fact that Cook intentionally misrepresented the claim, Plaintiffs are precluded from recovering under the policy.  In addition, since the evidence establishes arson by Plaintiffs, the policy provision excluding coverage for a dishonest act also precludes Plaintiffs from recovering under the insurance policy.    Thus, the insurance policy is void due to Plaintiffs' misrepresentations, and Trinity did not breach the contract.

---

[13]Cook is President and Owner of the Worm Shack, and he directed all actions of the corporation.  (Doc. 26.)

2.    Bad Faith Refusal to Pay.

An insurer is liable for its refusal to pay a direct claim when there is no lawful basis for the refusal coupled with actual knowledge of that fact. *Davis v. Cotton States Mut. Ins. Co.*, 604 So. 2d 354, 359 (Ala. 1992); *see also Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982)(quoting *Chavers v. Nat'l Sec. Fire & Cas. Co.*, 405 So. 2d 1, 7 (Ala. 1981)).   No lawful basis "means that the insurer lacks a legitimate or arguable reason for failing to pay the claim." *Gulf Atlantic Life Ins. Co. v. Barnes*, 405 So. 2d 916, 924 (Ala.  1981).  As such, to establish a "bad faith refusal" claim under Alabama law, the plaintiff must prove the following:

> (a) an insurance contract between the parties and a breach thereof by the defendant;
> (b) an intentional refusal to pay the insured's claim;
> (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
> (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
> (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*Bowen*, 417 So. 2d at 183.  *See also Ex parte Simmons*, 791 So. 2d 371, 378 (Ala. 2000); *Employees' Benefit Ass'n v. Grissett*, 732 So. 2d 968 (Ala.

1998).  Therefore, in order to establish a claim of bad faith refusal to pay, a "plaintiff must show that the insurer lacked *any* legitimate or arguable reason for not paying the claim."  *Bowen*, 417 So. 2d at 185 (emphasis added).  A plaintiff must go "beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute."  *Id.*  "If [the plaintiff's] evidence fails to eliminate any arguable reason for denying payment, any fairly debatable reason on a matter of fact or a matter of law, he cannot recover under the tort of 'bad faith refusal.'"  *Id.*  In fact, a plaintiff's burden is so heavy that, in order "to make out a prima facie case[,] . . .  the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law."  *Nat'l Savings Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982).  "Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and thus, the legitimacy of the denial thereof, the tort claim must fail."  *Id.*

If a plaintiff cannot prove the requirements to establish a bad faith refusal to pay an insurance claim, the plaintiff may prove a bad faith refusal

to pay claim by showing that the insurer failed to investigate the claim or to properly review the results of the investigation.[14]  *See State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293 (Ala. 1999).    Under a theory of bad faith failure to investigate, the plaintiff "must show (1) that the insurer failed to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review and (2) that the insurer breached the contract for insurance coverage with the insured when it refused to pay the insured's claim." *Id*. at 318.[15]  The primary consideration is "whether a claim was properly investigated and whether the results of the investigation were subjected to a cognitive evaluation and review." *Kervin v. Southern Guar. Ins. Co.*, 667 So. 2d 704, 705 (Ala. 1995).  The plaintiff must establish "that a proper investigation would have revealed that the insured's loss was covered under the terms of the contract." *Slade*, 747 So. 2d at 318. In

---

[14]Contractual liability to pay the insurance claim is a prerequisite to a bad faith claim of refusal to pay. *Slade*, 747 So. 2d at 318.

[15]The Alabama Supreme Court has made it clear that the abnormal cases of bad faith failure to investigate "have been limited to those instances in which the plaintiff produced substantial evidence showing that the insurer (1) intentionally or recklessly failed to investigate the plaintiff's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or review; (3) created its own debatable reason for denying the plaintiff's claim; or (4) relied on an ambiguous portion of the policy as a lawful basis to deny the plaintiff's claim." *Slade*, 747 So. 2d at 306-07.

addition, in order to prove a bad faith failure to investigate, the plaintiff must establish "that the insurer's failure to investigate at the time of the claim presentation procedure was intentionally or recklessly omissive." *Grissett*, 732 So. 2d at 976 (citing *Gulf Atlantic Life Ins. Co. v. Barnes*, 405 So. 2d 916, 924 (Ala. 1981)).   In determining whether a claim involves a bad faith failure to investigate, the date of the denial is crucial because "information received by the insurer *after* the date of the denial is irrelevant to the determination of whether the insurer denied at that date in bad faith." *Ins. Co. of N. Am. v. Citizensbank of Thomasville*, 491 So. 2d 880, 883 (Ala. 1986).  However, during a "reconsideration" or "appeal," an insurer can be liable for bad faith if the insurer fails to re-investigate the claim.  *See Ex parte Simmons*, 791 So. 2d at 381 (stating that an insurer who initially acted in good faith when denying a claim is not thereafter exempt from liability for acting in bad faith if it declines to alter its position after subsequently receiving information).

The general rule under Alabama law is that to show a bad faith refusal to pay, the insured must be entitled to a directed verdict on the breach of contract claim.  *See Ins. Co. of N. Am. v. Citizensbank of Thomasville*, 491

So. 2d 880, 883 (Ala. 1986).   Alabama case law limits claims for bad faith refusal to pay insurance claims "to those cases in which the insured is entitled to benefits under the policy."  *Slade*, 747 So. 2d at 318.

In this case, since Plaintiffs are not entitled to benefits under the claim due to the absolute defense of arson and the Plaintiffs' misrepresentations, Plaintiffs's bad faith claim must fail.  *See Slade*, 747 So. 2d at 318.  Accordingly, Defendant's motion for summary judgment based on the bad faith refusal to pay will be granted.

B.     Plaintiffs' Motion to Dismiss or for Judgment as a Matter of Law.

Defendant asserts counterclaims of bad faith, fraud, misrepresentation, and suppression under Alabama law.  Plaintiffs allege that these counterclaims are due to be dismissed or, in the alternative, that summary judgment is due to be granted.   The Court addresses each counterclaim below.

1.     Bad Faith.

Plaintiffs contend that Defendant's counterclaim for bad faith is not a viable claim against Plaintiffs since a bad faith claim must be brought by an insured, not the insurer.  (Doc. 31.)

Insurance contracts contain an implied covenant of good faith that neither party will do anything to injure the rights of the other in receiving the benefits of the agreement. *See Kennedy Electric Co., Inc. v. Moore-Handley*, 437 So. 2d 76, 80 (Ala. 1983). Alabama courts have permitted claims against insurance companies for the breach of the duty, imposed by law, of good faith. *See id.* However, Alabama courts have not extended the tort of bad faith beyond the area of insurance policy cases. *See id.* When faced with the issue of bad faith on the part of the insured, the Alabama Supreme Court stated:

> [W]e pretermit consideration at this time of whether Alabama should recognize "contributory bad faith" on the part of the insured as a defense to the tort of bad-faith failure to pay an insurance claim, and if we should recognize that defense, what effect it would have upon the tort of bad faith.

*White v. State Farm Fire & Cas. Co.*, 953 So. 2d 340, 351 (Ala. 2006).[16]

---

[16]Various state Supreme Courts have refused to recognize a reverse bad faith claim, which would allow an insurer to seek affirmative relief for an insured's breach of the duty of good faith and fair dealing. *See Tokles & Son, Inc. v. Midwestern Indemnity Co.*, 605 N.E. 2d 936, *overruled in part on other grounds* (Ohio 1992); *First Bank of Turley v. Fidelity and Deposit Ins. Co.*, 928 P.2d 298 (Okla. 1996); *Johnson v. Farm Bureau Mutual Ins. Co.*, 533 N.W.2d 203, 208 (Iowa 1995)(stating that it was not aware of any "jurisdiction that has adopted the tort of reverse bad faith"); *In re Tutu Water Wells*, 78 F. Supp. 2d 436 (reverse bad faith has not been recognized by any jurisdiction in the United States; therefore, the court was compelled to dismiss defendant's counterclaim for bad faith); COUCH ON INSURANCE § 208:4 (3d ed.); 2 LAW AND PRACTICE OF INS. COVERAGE LIT.

While Defendant has made an extensive argument that this Court should allow the reverse bad faith counterclaim since Alabama courts have not specifically held that they do not recognize such a claim, this Court is bound to apply the Alabama law regarding bad faith claims as it has been determined by Alabama courts.  *See In re Hoover*, 447 F.2d 195, 198 (5th Cir. 1971)(where the federal court refused to concern itself with the equity or correctness of a policy that had been adopted by the Louisiana state court).

In diversity actions, federal courts are required to apply state substantive law in deciding the case, except where the Constitution or treaties of the United States or Acts of Congress compel otherwise.  *See* 28 U.S.C. § 1652 (2006);  *Erie R. Co. v. Tompkins*, 305 U.S. 64, 78-79 (1938). In particular, in a contract action, a federal court sitting in a diversity action applies the substantive law of the forum state.  *See Technical Coating Applicators, Inc. v. U.S. Fidelity & Guar. Co.*, 157 F.3d 843, 844-45 (11th Cir. 1998).

Applying state substantive law, federal courts are required to follow

§ 28:38 (2007).

the decisions of the state's highest court when the state court has addressed the relevant issue. *CSX Transp., Inc. v. Trism Specialized Carriers, Inc.*, 182 F.3d 788, 790 (11th Cir. 1999).  When considering these issues in a diversity action, federal courts are not at liberty to restructure state law.  *See Green v. Amerada-Hess Corp.*, 612 F.2d 212, 214 (5th Cir. 1980)(where the federal court stated that it would not create state law).   Even "[i]n the absence of controlling precedent, we must nonetheless decide . . . issue[s] as we believe an [Alabama] court would decide them. . . ." *Wammock v. Celotex Corp.*, 820 (11th Cir. 1988)(quoting *Green*, 612 F.2d at 214).

Here, this Court must apply Alabama law to the case, since the case involves a contract action. Since Alabama courts have not specifically decided whether an insurer can bring a reverse bad faith claim against the insured, this Court must decide this issue as an Alabama court would decide it.  *See Green*, 612 F.2d at 214.  Alabama courts have narrowly construed bad faith claims, and have refused to extend a bad faith claim to various types of cases.  Specifically, Alabama courts have strictly applied the claim for bad faith to insurance cases where the insurer refused in bad faith to pay a claim; therefore, Alabama case law argues against recognizing a cause of

action for reverse bad faith. Moreover, the Alabama Supreme Court has published an opinion that expressly states that the court has pretermitted consideration of whether Alabama will recognize a reverse bad faith claim. *See White*, 953 So. 2d at 351.   Since the Alabama Supreme Court has decided to purposely disregard the cause of action of bad faith by the insured, this Court cannot consider the bad faith claim on the part of the insured.  *See Nebula Glass Intern., Inc. v. Reichhold, Inc.*, 454 F.3d 1203 (11th Cir. 2006)(where the court stated that it was *Erie*-bound to apply Florida law in diversity cases); *Technical Coating Applicators, Inc.*, 157 F.3d 843 (stating that a federal court in a diversity case is required to follow the decisions of the state's highest court when the court has addressed the relevant issue to the case).  This Court will not create law for Alabama and therefore declines to extend the tort of bad faith to claims against the insured.   Thus, Plaintiffs' motion to dismiss Defendant's counterclaim of bad faith on the part of Plaintiffs will be granted.

> 2.     Fraud, Misrepresentation, and Suppression.

Plaintiffs contend that the counterclaims of fraud, misrepresentation, and suppression should be dismissed for failure to plead with specificity.

(Doc. 31.)

According to the Federal Rules of Civil Procedure,

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed. R. Civ. P. 9(b)(2007).

Federal Rule of Civil Procedure 9(b) requires fraud to be plead with particularity.  Fed. R. Civ. P. 9(b)(2007).  "The plaintiff's complaint must allege the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."  *American United Life Ins. Co. v. Martinez,* 480 F.3d 1043, 1064 (11th Cir. 2007)(quoting *Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 568 (11th Cir. 1994)).

In this case, Defendant made counterclaims of fraudulent misrepresentation and suppression.  (Doc. 3.)  In making these claims, Defendant asserts that Plaintiffs made material misrepresentations concerning the fire loss and that Plaintiffs suppressed information from Trinity concerning the fire loss.  *Id.* at ¶¶ 7 & 11.  However, the complaint is vaguely worded and omits crucial allegations. Trinity's allegations do not

satisfy the requirement of pleading with particularity since they fail to allege specifically what statements Plaintiffs misrepresented to the adjustor, what information Plaintiffs withheld from the adjustor, when this fraud occurred, or what involvement Cook and the Worm Shack had in perpetrating this fraud.   Trinity presented only general conclusory allegations of fraudulent misrepresentation and suppression.  Such general conclusory allegations do not satisfy the heightened pleading requirements for fraud under Rule 9(b).  *See American United Life Ins. Co.*, 480 F.3d at 1054 (where the court held that Jefferson Pilot's allegation of fraud did not conform to the requirements for pleading fraud since Jefferson Pilot did not allege that an imposter stood in for Metoyer when it was time for medical exams, when the fraud occurred, or who was involved).

While Defendant plead particular allegations of fraudulent misrepresentation and suppression in its brief in response to the motion to dismiss, Defendant never requested leave to amend its complaint.  The Eleventh Circuit has held that when the complaint does not satisfy Rule 9(b), but rather states only general conclusory allegations of fraud, the claimant is entitled to one chance to amend the complaint to bring it into compliance

with the rule.  See *Cooper v. Blue Cross & Blue Shield of Fla., Inc.,* 19 F.3d 562, 568-69 (11th Cir. 1994)(where court allowed plaintiff one chance to amend the complaint to satisfy Rule 9(b)).  However, "[a] district court is not required to grant a [claimant] leave to amend his complaint sua sponte when the [claimant], who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Industries Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002)(stating that this new rule is efficient and in line with the concept of finality in the judicial system).  Here, Defendant failed to file a leave to amend its counter-complaint.  Therefore, Defendant's complaint still only asserts general allegations of fraud.  Since Defendant's complaint does not plead with particularity the basis of the fraud alleged, the complaint does not comply with Federal Rule of Civil Procedure 9(b).  Thus, Plaintiffs' motion to dismiss is due to be granted.

VI.    Conclusion.

For the reasons stated above, Defendant's Motion for Summary Judgment and Plaintiffs' Motion to Dismiss a Portion of Defendant's counterclaim are due to be granted.  Trinity's counterclaim for breach of

contract remains.  A separate order in conformity with this opinion will be entered.

Done this <u>13th</u> day of <u>December 2007</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153